# IN THE MATTER OF THE IMPEACHMENT OF ELMER RUSSELL B E V I N S, AN ELECTED COUNTY OFFICER OF THE COUNTY OF MAUI, TERRITORY OF HAWAII.

## No. 1658.

APPEAL FROM CIRCUIT JUDGE SECOND CIRCUIT.
HON. D. H. CASE, JUDGE.

ARGUED OCTOBER 26, 1925.                    DECIDED NOVEMBER 13, 1925.

PERRY AND LINDSAY, JJ., AND CIRCUIT JUDGE BANKS IN PLACE OF PETERS, C. J., ABSENT.

OFFICERS—*removal—right of petitioners to withdraw.*

In a proceeding instituted under R. L. 1925, section 1639, for the removal of a county attorney from office for malfeasance, any one or more of the petitioners may withdraw as such, at least before answer on the merits is filed and with leave of the court. In that event the suit may not be maintained by the remaining petitioners, if less than the statutory number of twenty-five.

OPINION OF THE COURT BY PERRY, J.
(Circuit Judge Banks dissenting.)

This is a petition instituted by twenty-nine petitioners before the judge of the circuit court of the second circuit for the removal of the respondent from the office of county attorney of the County of Maui, on the ground of malfeasance. Upon a question reserved to this court it was held that the demurrer interposed should be overruled. Subsequently the demurrer was overruled and by stipulation of the parties the time was fixed for trial of the cause upon its merits. Before, however, the filing of any answer by the respondent seven of the petitioners filed in writing their respective withdrawals as petitioners and discontinuances of the petition, each one of these seven giving in the written document his reasons for withdrawing and discontinuing. In some, and perhaps all, one reason given was that the petition was signed without full knowledge or understanding of its contents or purposes. In some the charge was made that there were misrepresentation and fraud in the securing of the signatures. After taking evidence on the subject the trial judge found that there was no misrepresentation, mistake or other fraud in the obtaining of the signatures and ruled that the seven petitioners were not at liberty to withdraw or to discontinue and gave judgment for the petitioners on the pleadings, ordering the removal of the respondent from his office. From that decree the case comes to this court on appeal.

One of the questions presented is whether the seven petitioners had the right to withdraw or discontinue and whether, if they did have that right, the remaining twenty-two petitioners can maintain the suit. The statute reads: "Any elected county officer * * * may be removed for malfeasance, misfeasance, nonfeasance or maladministration in office. Any circuit court within the county shall be a court of impeachment for the trial of any such

elected or appointed officer who may be so charged, and such circuit court shall sit without a jury and shall proceed according to the form required for the trial of all civil cases at common law as modified by statute. A verified petition, setting forth in detail the charges preferred against such officer and praying for his removal, may be filed in such circuit court by not less than twenty-five persons who are citizens and voters of the county, and thereupon the court shall fix the time within which the officer charged shall answer the charges, but in no case less than twenty days from date of service, and, a certified copy of such charges, together with a proper summons, shall be served upon the officer so charged as in any civil case. If such officer shall fail to appear and answer on or before the return day, he may be defaulted, and the court may, after default, hear the petitioners upon their proof and, if the charges are sustained, may remove the officer and his office shall thereupon become vacant; but if the officer shall, on or before the return day, appear and file a written reply to the charges, either in the form of a demurrer or traverse, the issues formed by the reply shall, after notice, be set down and heard by the court and the cause shall proceed to final termination as in other civil law causes. If it shall be finally adjudged that the charges are unfounded in law or in fact, the respondent may recover his costs; but if the charges are adjudged to be founded upon both law and fact, the court shall adjudge the office to be vacant and award the costs against the respondent." R. L. 1925, Sec. 1639.

*Bright* v. *Fern,* 20 Haw. 325, was a petition brought by thirty voters under section 57, Act 118, S. L. 1907, relating to election contests. That statute provided that "any candidate directly interested, or any thirty duly qualified voters of any election district may file a petition in the supreme court of the Territory setting forth any

cause or causes why the decision of any board of inspectors should be reversed, corrected or changed." The petition was brought by thirty-one petitioners but before an answer was filed two of these withdrew and discontinued leaving less than the statutory number of thirty to maintain the proceeding. The right of the two petitioners to withdraw and the effect of their withdrawal upon the continued existence of the suit were fully considered by the court. It was held that the two had the right to discontinue and that the remaining twenty-nine could not maintain the proceeding. The court said: "This is an adversary proceeding. While the public may to some extent have an interest in it, it has not control of it so as to prevent any or all of the petitioners from withdrawing from the contest. The public is not a party. The ordinary rules as to the control of petitioners over their own case apply in this respect. Before issue joined any one or more of the parties plaintiff may withdraw subject to such order as may be made concerning costs and, perhaps, to certain other limitations which do not apply in the case at bar. If leave to discontinue is ordinarily requisite at this stage no reason occurs to us for withholding it. The presumption is that the election was validly conducted and the court should not place itself in the position of encouraging litigation by compelling the continuance of the contest against the will of the petitioners. The withdrawal of two of the petitioners requires the dismissal of the petition. While the language of Section 57, Act 118, L. 1907, is that any thirty voters may 'file a petition,' the statute contemplates, we think, that thirty voters are requisite not only to the institution but also to the continuance of the proceeding. The intent of the legislature evidently was that no contest should be permitted unless (aside from action by the defeated candidate himself) thirty voters could be found who agreed

that a contest would be justified by the facts and necessary or desirable. If any of the thirty, at least before answer, lose faith in their petition or for any reason alter their views as to the desirability of further litigation, the contest becomes that of the remainder only. If one of the thirty may withdraw and still leave vitality in the proceeding, twenty-nine may withdraw with the same result. We are unable to conclude that the legislature contemplated the continuance by one voter, or by ten or by any number less than thirty, of a contest, even though properly instituted by the required number." That ruling and the reasoning in support of it is applicable in the case at bar. It is true that in the former case the contest was with reference to an election while in the case at bar it is with reference to an attempted removal of an officer from his office but the statutory language under consideration is substantially the same and the principles involved are the same. The decision was rendered in 1910, fifteen years ago, and the legislature has not seen fit to amend the statute. That of itself is a sufficient reason for not now adopting another construction of the statute. It may be added, however, that we think that the law was there correctly stated. In the statute now under consideration (Sec. 1639) not only is there no language justifying the view that the legislature intended that less than twenty-five petitioners could maintain the action after it was once filed but the statement is made that even after default the court may hear "the petitioners" upon their proof and that if it be finally decreed that the charges are unfounded "the respondent may recover his costs." By the words "the petitioners" the legislature would seem to have meant the twenty-five persons who are referred to earlier in the section as authorized to file the petition and so also the recovery of costs would be from the petitioners and not from anyone else. Cases decided in other juris-

dictions under dissimilar statutes are not helpful. For example, under statutes authorizing the establishment or alteration of highways or the laying of sewers upon petition of a certain number of citizens or voters, boards of supervisors or other officers of the government are charged with the duty to conduct the proceedings after the necessary petition has once been filed and under those statutes the petitioners after the board or other officer has acquired jurisdiction and has acted have no further duty or power in the matter; but under our statute relating to the removal of officers, as also under the statute of 1907 relating to election contests, the proceeding is of an adversary nature. In each there are plaintiffs and defendants. In each there is a contest between the plaintiffs and the defendants, and the court merely sits as an impartial tribunal to decide the law and the facts. If there are no plaintiffs or an insufficient number of plaintiffs there is no contest and the court has no function to perform. The court cannot place itself in the position of plaintiffs or complainants and conduct the attack upon the respondent's right to hold office. If it had been thought desirable to authorize the attorney general alone or any other officer or person to institute and conduct such a proceeding as this the legislature could easily have so stated. The same would be true if it had been desired to authorize a larger number to institute the suit and one or more of that number less than all to conduct it. In the statute under consideration there is no indication of any such intent.

Our statutes do not specify any limit of time within which such a petition as this, for the removal of a county attorney from office, may be filed. If there are any twenty-five citizens and voters of the County of Maui, whether inclusive or exclusive of the twenty-two present petitioners who have not discontinued, who believe that

cause of removal exists and that it is desirable that respondent should be removed, they are at liberty now to institute a new proceeding for that purpose. The seven petitioners who have discontinued did not, by their discontinuance, prejudice the rights of the remainder of the citizens and voters of that county. There is no room under our statute for the theory that persons who have once signed as petitioners are agents or trustees for the remainder of the community and are recreant to their trust if they discontinue.

In *Beebe* v. *Wilkins,* 29 Atl. (N. H.) 693, which was a petition for the abatement of a liquor nuisance, the court regarded the proceeding as in its nature criminal and said that "the state is the real plaintiff." Our statute, on the contrary, clearly shows that any proceeding instituted under it is civil and not criminal, for it provides (a) that the court of impeachment "shall proceed according to the form required for the trial of all civil cases at common law as modified by statute," (b) that service shall be made upon the officer charged "as in any civil case" and (c) that after issue the cause shall proceed to final termination "as in other civil law causes." In the case at bar the Territory is not a party. The public is in no way authorized by the statute to be made a party and has no control over the proceedings. The petitioners alone have control over their proceeding, as in ordinary civil cases.

*Mollan* v. *Torrance,* 9 Wheat. 537, was a cause instituted in a district court of the United States. That court's jurisdiction depended upon the fact of diverse citizenship and it was therefore alleged in the declaration that the plaintiffs were citizens of one State and that the defendant was a citizen of another State; but the declaration was "silent respecting the citizenship or residence of Lowrie, the immediate indorser of Torrance,

through whom the plaintiffs trace their title to the money for which the suit" was instituted. The defendant filed a plea to the jurisdiction to the effect that the promises sued on were made to Lowrie and not to the plaintiffs and that Lowrie and the defendant were both at the time of the filing of the plea citizens of the same State. The supreme court's statement, in holding the plea insufficient, that "it is quite clear that the jurisdiction of the court depends upon the state of things at the time of the action brought, and that, after vesting, it cannot be ousted by subsequent events" had reference to the facts of that case and is in no wise applicable in the construction of our statute relating to removals from office.

It is not material that the discontinuances were filed after the demurrer had been passed upon. Just what is the latest stage of the case at which a discontinuance may be so filed it is unnecessary to consider. In this case, as in *Bright* v. *Fern,* the discontinuances were presented before answer on the merits was filed. While the right to discontinue is said to be subject to the approval of the court such approval is ordinarily granted almost as matter of course. No reason appears in this case why the discontinuances should not be permitted. It is immaterial whether the signatures of the seven petitioners were secured by fraud. If they are not willing to continue as petitioners, that is sufficient.

The judgment appealed from is set aside and the cause is remanded to the trial court with directions to allow the withdrawals and discontinuances and for such further proceedings as may be proper, not inconsistent with this opinion.

*W. B. Lymer,* Attorney General (also on the brief), for petitioners.

*M. F. Prosser* (*Frear, Prosser, Anderson & Marx* and *A. E. Steadman* on the brief) for respondent.

DISSENTING OPINION OF CIRCUIT JUDGE BANKS.

The writing of dissenting opinions is a futile undertaking. In the first place they are not the law and in the second place no one ever reads them. Their only justification is that they are the sole means by which a discordant judge may escape the alternative of subscribing to a pronouncement of the law which does not meet with his approval. They may also serve as "Foot prints, that perhaps another, Sailing o'er life's solemn main, A forlorn and shipwrecked brother, Seeing, shall take heart again."

In dissenting from the conclusions reached by the learned justices whose opinion constitutes the law of this case and determines its destiny I am aware of course that I am likewise out of harmony with a prior decision of the court involving the same question reported in 20 Haw. 325. I refer to *Bright* v. *Fern* decided by a divided court in 1910. If the principle of law announced in that case is sound then the instant case is correctly decided. On the other hand if the doctrine laid down in that case is unsound the instant case should have been decided otherwise. In *Bright* v. *Fern* the suit was instituted by a certain number of qualified voters for the purpose of contesting an election. In the instant case the suit was instituted by a certain number of citizens and voters for the purpose of impeaching a public official. In each case the jurisdiction of the court was invoked by the filing of a petition and attached to the respondent when process was served upon him. The right of the court to proceed to a hearing and determination of the cause was thus fixed and determined. This is jurisdiction. Can it be defeated by the withdrawal from the suit of such a number of those who have invoked it as to leave those remaining less than the number required to confer it? The decision in *Bright* v. *Fern* declares this to be the result and the opinion of the court in the present case reaffirms the doctrine. For

several reasons it seems to me that the conclusion is unsound. And these reasons I believe to be strongly buttressed by principle and by precedent.

In the first place voters and citizens acting under statutory authority who set in motion the machinery of the court for the purpose of exposing fraud in the conduct of elections and preventing the incumbency of public office through the suffrage of a corrupted electorate or who invoke judicial aid in removing from official position one who has proven himself unworthy of trust, in a vital sense act in a representative capacity. They petition judicial interference not only in their own behalf but in behalf of an entire constituency whose happiness and security depend on honest government and faithful public service. Having brought public grievances of such a nature to judicial attention they should not be permitted to abandon their undertaking and close the doors to judicial investigation which they themselves have opened. Having espoused a cause in which every citizen has a deep concern they should be held to their course until the matters about which they complain have been fully heard and finally determined. It is too literal to say that the controversy which they originate is a purely private one which they may abandon at their pleasure. When they put themselves forward as the champions of the public interest they invest others with the moral right at least to insist on a judicial ascertainment of the truth or falsity of the charges which they prefer.

The institution of impeachment proceedings against public officials is a serious matter. The institution of proceedings which challenge the honesty of election officers or the integrity of voters is equally a serious matter. It should only be done after mature consideration and full investigation. The time for this is before action is taken and not after. The requisite number of qualified peti-

tioners having put their hand to the plow should not be allowed to turn back. To permit them to do so only invites hasty and ill-considered action in the beginning.

In the second place when the necessary number of petitioners unite in seeking and obtaining the jurisdiction of the court they do so in behalf not only of all the signers of the petition as a unit but in behalf of each one individually. Each one of them becomes entitled to whatever benefits may result from the success of their suit and each one of them becomes liable for whatever expense may be attached to failure. To permit any one or more of them to defeat the jurisdiction of the court by withdrawing thus imposing a financial burden on those who, having more faith in the righteousness of their cause, wish to continue the prosecution would manifestly be unjust. If there be repentant or spineless ones who wish to recant let them do so if they can legally (which I do not concede) but in all conscience and in all fairness do not withhold from those who wish to remain faithful protection by the court, in the exercise of its jurisdiction, of a right conferred on them equally with their cosigners. Why mulct them in costs because of desertions which they are unable to prevent when they might if permitted to proceed prevail in the suit and cast the cost of the litigation on their adversary?

In the third place the jurisdiction of the court is fixed by the status of the parties at the time suit is brought and the respondent served and cannot be ousted by subsequent change in their status. This is the great foundation-stone upon which jurisdiction of courts rests giving stability to something which otherwise would be forever illusive and uncertain. It is the principle which gives to judicial authority its permanence and its dignity. If this were not the law the jurisdiction of courts would be a portable sort of thing to be picked up or laid aside or car-

ried about at the whim of every capricious litigant who has sought its aid. So far as I know this cardinal rule was first declared in this country by Chief Justice Marshall in the case of *Mollan* v. *Torrance*, 9 Wheat. 537. With a very few singular exceptions it has been the law ever since. It has been applied in various circumstances and always with the result that whatever changes may take place in the status or condition of the parties to a suit jurisdiction having once attached remains. It has been applied with such convincing logic to circumstances so similar to those that existed in *Bright* v. *Fern* and that exist in the present case that to deny its applicability would be a mere quibble. So much for the principles upon which my dissent is based. They are fully supported by judicial precedent. McCrary on Elections (4 ed.) at section 454 expresses the very wholesome and rational view that "A contested election case, whatever the form of the proceeding may be, is in its essence a proceeding in which the people—the constituency—are primarily and principally interested. It is not a suit for the adjudication and settlement of private rights simply. It follows that the parties to the record can not, by stipulation or otherwise, discontinue or compromise a case of this character without the consent and approval of the court or tribunal trying it. Nor should such consent ever be given, unless the court giving it is sufficiently advised to be able to say that it is for the interest of the public to do so." *Miller* v. *Maier*, 136 Minn. 231 (2 A. L. R. 399), was a case involving an election contest. The proceedings were instituted by the requisite number of qualified voters. Before the trial three of the petitioners sought to withdraw from the contest. In denying their right to do so the supreme court of Minnesota said: "On April 5, three of the electors who had signed and sworn to the petition made application to the court, through the attorneys for

contestee, for leave to withdraw from the petition upon the ground that they did not, at the time of signing the same, fully understand the contents thereof. This application was properly denied by the court. Contests of this character based upon a statutory petition, signed and sworn to by a large number of electors for the purpose of setting a contest in motion, constitute the beginning of a very important litigation, in which the public has a deep interest, and men should not lightly be permitted to stultify themselves by saying that they did not know what they were doing when they signed an instrument of that gravity. In re Grim, 14 Wkly. Notes Cas. (Pa.) 303. The proceeding was in no legal sense under the control of the contestants, after the court had taken action therein by calling a special term of court. The filing and serving of the petition, together with the notice, conferred upon the court power to act in the premises, and, after jurisdiction is thus conferred and the court has acted thereon, the jurisdiction cannot be defeated by any number of such petitioners subsequently withdrawing from the petition." *Irmegar et al. v. Tazewell County,* an Illinois case reported in 106 N. E. at page 227, was also a contested election case. The statute required that a petition contesting an election should be signed by not less than five electors. The petition in the case before the court was originally signed by eleven electors. Subsequently they all withdrew except four. Upon motion of the defendant the trial court dismissed the petition on the ground that it no longer had jurisdiction to proceed. The supreme court reversing the lower court said: "When such election contests are brought in court, as required under the statute, the rules as to jurisdiction must necessarily be the same as in other judicial proceedings, unless the statute on election contests, from its wording, should be construed otherwise. The general rule is that the jurisdiction of a court over a

Banks, Circuit Judge, dissenting.

cause depends on the state of facts at the time the action
is brought; that, after jurisdiction has once vested, it can-
not be divested by subsequent events.   Change of residence
or of the condition of the parties or of the amount in
dispute cannot take away jurisdiction that has once at-
tached." (Several cases cited.) "Under these authorities
jurisdiction attached as soon as this petition was filed.
Nothing is found in the wording of the statute on election
contests that indicates in any way that the question of
jurisdiction in such court proceedings should be treated
differently from the question of jurisdiction in any other
cause.   Obviously, therefore, jurisdiction having vested,
it was not divested by the withdrawal of certain of the
petitioners, unless, under the statute, they had the right
to control and dismiss the petition.   A part of the com-
plainants, if this were an ordinary lawsuit, would have
no authority to dismiss this proceeding so as to oust the
court from jurisdiction to try the same on behalf of the
other complainants.   After suit brought part of the
plaintiffs cannot be permitted to withdraw, if by so doing
the remaining plaintiffs in the suit are injured. *Holkirk*
v. *Holkirk*, 4 Madd. 50; *Jeffcoat* v. *Jeffcoat*, 3 L. J. Ch.
(O. S.) 45.   This court has held that one of two plain-
tiffs has no right to dismiss the action against the objec-
tions of the other, even though the person desiring to dis-
miss is liable to be injured by the further prosecution,
provided his coplaintiff shall indemnify him against the
loss. *Winslow* v. *Newlan*, 45 Ill. 145. See, also, Andrews'
Stephen's Pl. (2d Ed.) §31.   If the argument of counsel
for appellee is sound, then why should not death, insan-
ity, conviction of felony, or removal from the election
district of any one of the petitioners after the filing of
the petition operate, in and of itself, as a dismissal of
the petition, and thus oust the court of its jurisdiction?"
*Beebe et al.* v. *Wilkins* is a New Hampshire case reported

in 29 Atl. 693. It was a suit brought under a statute allowing not less than twenty legal voters to file a petition in the supreme court for the abatement of certain nuisances. Twenty-two legal voters filed a petition against the defendant Wilkins praying the abatement of a liquor saloon. After filing their petition three of the petitioners were allowed to withdraw their names, thus reducing the number remaining to less than twenty. Thereupon the defendant moved that the case be dismissed. In denying the motion the supreme court of New Hampshire said: "Under this statute, the filing of a petition for the abatement of a liquor nuisance, signed by 22 legal voters, gave the court jurisdiction of the subject-matter, and by due notice jurisdiction of the person of the defendant was acquired. The statute remaining in force, the jurisdiction thus obtained extends to the final judgment in the cause, and cannot be taken away by any change in the residence or condition of the petitioners. An information filed by the solicitor, or a petition signed by not less 20 legal voters, is necessary to give jurisdiction under the statute, as a complaint, information, or indictment is essential to jurisdiction in criminal cases; and a petitioner's voluntary withdrawal, death, or ceasing to be a legal voter affects the jurisdiction no more than the death of a complainant or prosecuting officer by whom an information was filed, or the decease or removal from the jurisdiction of a member of the grand jury by whom an indictment was found affects the jurisdiction of the court in a criminal proceeding. In such cases the state is the real plaintiff, although, in some instances, a complainant or petitioner may be liable for costs. In the administration of municipal affairs, instances are numerous where jurisdiction is given by statute to tribunals to act upon petition of a certain number of legal voters. In such cases, jurisdiction once acquired is not lost by the reduc-

tion of the number of petitioners below the statutory limit by death or removal pending the action of the tribunal. If the petitioners are regarded as parties, the jurisdiction is determined by the state of facts existing at the time of filing the petition. When jurisdiction has attached, it is not defeated by subsequent acts of the parties. Jurisdiction of the subject-matter and of the parties, once obtained, is not lost by the removal of one or all of the parties out of the territorial jurisdiction. When it depends upon residence of the parties, or upon the amount in controversy, a change of residence or a reduction of the amount by confession or otherwise does not oust the court of jurisdiction once acquired."

It is sought in the majority opinion to distinguish the instant case from the New Hampshire case by saying that the latter was criminal in its nature while the instant case is entirely civil in its nature. This distinction does not seem to me sound. In the first place the New Hampshire case was no more a criminal case than is the instant case. One was brought for the purpose of suppressing a liquor saloon that had become a public nuisance and the other was brought for the purpose of removing a public official who had become a public menace. They were both instituted by private individuals for the public benefit and they are both penal in their nature. When the court in the New Hampshire case said the state was the real party in interest it simply meant that the people who compose the state, in other words the public, had a beneficial interest in the suit. This is equally true of the instant case. The Territory not as a governmental entity but as a people constituting a governmental entity is the real party in interest. In the second place the decision of the New Hampshire court was not predicated on the fact that the proceeding was criminal in its nature nor that the state was the real party in interest but on the funda-

mental ground that the court having acquired jurisdiction would hold it notwithstanding the withdrawal of some of the petitioners. In that regard it is in harmony with most of the other appellate courts in this country.

It is said in the majority opinion that our impeachment statute not only requires the institution of proceedings by not less than twenty-five voters and citizens but it also requires that the entire twenty-five shall continue the prosecution of the suit. Of course there is no such direct requirement in the statute. If it is there at all it is entirely inferential. It seems to me a strained construction to deduce such a requirement, as is done in the majority opinion, from the expression that "after default the court may hear the petitioners upon their proof." By the same reasoning it would follow that because the court is vested with power to "hear the petitioners upon their proof" after default all the petitioners must appear and offer proof and that no lesser number than all of them could offer proof of the truth of their charges. If this latter construction should be placed on the statute and one of the twenty-five petitioners should become insane or leave the country or otherwise become unable to appear the remaining twenty-four would be rendered impotent and the case would reach an impasse. If the entire twenty-five are not required to offer proof in the event the respondent is defaulted upon what hypothesis can it be argued that the entire twenty-five must adhere to the petition in order to preserve the jurisdiction of the court? The evident purpose of the statute in requiring the petition to be signed by not less than twenty-five voters and citizens was to confer jurisdiction upon the court to judicially hear and determine whether the official whose conduct is questioned should be impeached and removed from office. The jurisdiction of the court having attached the general rules governing its permanency are to be applied.

Banks, Circuit Judge, dissenting. ·

It is suggested in the majority opinion that the legislature has placed its imprimatur on the decision in the *Bright* v. *Fern* case by not subsequently amending the statute. This is the only instance I have ever known where the inaction of the legislature was considered an approval of a judicial decision. Every lawyer of course is familiar with the principle that when a statute has been judicially construed and is afterward reenacted the construction placed on it becomes a part of the statute. It is quite different however to conclude that because a statute has been erroneously construed the failure of the legislature to amend it estops the court from correcting its own error. It would be just as logical to hold that if the Supreme Court of the United States misconstrued a clause of the Federal Constitution and Congress thereafter did not offer an amendment correcting the error such inaction would be equivalent to a legislative affirmance of the decision of the court and the error must therefore remain incurable. Such a conclusion shifts a responsibility which belongs to the judicial department of the government to the legislative department.

My preference is that the supreme court of Hawaii should put itself in accord with other jurisdictions on this very important question.